**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2161
_____

RICHARD T. BALSAVAGE

v.

JOHN E. WETZEL, SECRETARY OF THE PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; DEBRA SAUERS, SUPERINTENDANT OF THE STATE
CORRECTIONAL INSTITUTION AT FOREST; THE DISTRICT ATTORNEY OF
THE COUNTY OF BERKS; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

The District Attorney of the County of Berks,
                                                     Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 5-11-cv-05817)
District Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2013
_____

Before: HARDIMAN, SHWARTZ, and SCIRICA, Circuit Judges.

(Filed: November 15, 2013)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

Richard T. Balsavage was convicted of sexually abusing children. He was sentenced to prison followed by a period of probation. He violated a condition of probation and was sentenced to an additional period in prison. After successfully obtaining post-conviction relief on his sentence for the probation violation, he was sentenced to a term of imprisonment seven times greater than his original probation violation sentence. He filed a petition pursuant to 28 U.S.C. § 2254, alleging that the new sentence was vindictively motivated by his appeals of the sentencing judge's rulings. The District Court agreed, granted the petition, and ordered the reimposition of the original probation violation sentence. We will affirm the District Court's order granting the petition but vacate the order as to the remedy imposed.

I.

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. Balsavage was convicted in the Court of Common Pleas of Pennsylvania of eight counts of sexual abuse of children in violation of 18 Pa. Cons. Stat. § 6312(d) and was sentenced to 9 to 23 months' imprisonment. Shortly after his release from prison, he violated the conditions of his probation. At the probation revocation hearing, the court [the "Gagnon court"][1] heard testimony from prison officials,

_____

[1] In Gagnon v. Scarpelli, 411 U.S. 778 (1973), the Supreme Court defined the due process rights of individuals accused of violating the conditions of their probation or parole. The phrase "Gagnon court" is sometimes used to refer to the court that presides over state probation and parole revocation proceedings.

counselors, and Balsavage's former cellmate, which indicated Balsavage's deviancy, danger to the community, and inability to be treated. The Gagnon court stated that Balsavage was "not amenable to treatment" and, citing the need for punishment and to protect children and the community at large, sentenced him to 3 ½ to 7 years' imprisonment [the "original sentence"]. App. 82-83.

Balsavage appealed and the Superior Court of Pennsylvania affirmed. Balsavage then filed a petition for relief under the Post Conviction Relief Act ["PCRA"], 42 Pa. Cons. Stat. §§9541-46, arguing, among other things, that he was denied his right of allocution during the original violation sentencing hearing. The Gagnon court granted Balsavage's PCRA petition and convened a resentencing hearing.

At the resentencing hearing, Balsavage exercised his right of allocution and thanked the court, admitted responsibility for his actions, and expressed remorse. The Gagnon court observed that there was "very little that - - virtually nothing that's new or different from the time of the prior sentencing, as far as the background information." App. 234. The Gagnon court proceeded to question Balsavage, and Balsavage responded that: (1) since his prior sentencing hearing, he had been imprisoned and therefore lacked access to children or materials related to children; (2) before his initial term of imprisonment, he had victimized a total of thirteen children; (3) he did not cooperate with the Sexual Offender Assessment Board at the time of his initial conviction, which resulted in a finding that he was not a sexually violent predator; and (4) contrary to the testimony of his probation officer, he did not harbor fantasies of murdering

3

schoolchildren. In imposing the new sentence, the Gagnon court considered the need to protect the public, the gravity of Balsavage's offense, and his rehabilitative needs, as well as "the fact that [Balsavage] appealed every decision and sentence this Court ever imposed on [him]." App. 236. The Gagnon court sentenced Balsavage to 24 ½ to 49 years' imprisonment, a sevenfold increase from his original sentence.

Balsavage filed a Motion to Modify Sentence, which was denied. Balsavage appealed his sentence to the Superior Court of Pennsylvania, arguing, among other things, that his increased sentence was an unconstitutional deprivation of due process in that it was imposed in retaliation for exercising his appellate rights. Relying exclusively on Pennsylvania law, the Superior Court affirmed. Balsavage filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied.

Balsavage thereafter filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his sentence of 24 ½ to 49 years' imprisonment was the product of judicial vindictiveness and therefore violated his due process rights as articulated in North Carolina v. Pearce, 395 U.S. 711 (1969). The District Court conditionally granted Balsavage's petition, ordering that a writ of habeas corpus would issue unless he was resentenced within 120 days to a term of imprisonment not to exceed the original term of 3 ½ to 7 years. The Berks County District Attorney appealed.[2]

---

[2] The District Court had subject matter jurisdiction under 28 U.S.C. § 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the District Court decided Balsavage's petition without conducting an evidentiary hearing, our

II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

["AEDPA"],

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Section 2254(d) requires a petitioner to show that: (1) "the state

court decision was contrary to clearly established federal law, as determined by the

Supreme Court"; (2) "the state court judgment rests upon an objectively unreasonable

application of clearly established Supreme Court jurisprudence"; or (3) "the state court

decision was based on an unreasonable determination of the facts in light of the evidence

presented to the state court."  Blystone v. Horn, 664 F.3d 397, 417 (3d Cir. 2011)

(internal quotation marks and citations omitted).  If the state court has adjudicated a

petitioner's claim on the merits, AEDPA "imposes a highly deferential standard for

_____

review of the District Court's decision is plenary.  See Jacobs v. Horn, 395 F.3d 92, 99
(3d Cir. 2005).

5

evaluating state-court rulings, and demands that state-court decisions be given the benefit

of the doubt."[3]  Id.  (quotation marks and citation omitted).

III.

A state court decision is "contrary to clearly established law if it applies a rule that

contradicts the governing law set forth in the [Supreme] Court's cases or if it confronts a

set of facts that are materially indistinguishable from a decision of the Court and

nevertheless arrives at a result different from the Court's precedent."  Id. (citing Williams

v. Taylor, 529 U.S. 362, 405-06 (2000)).  Because the Superior Court's decision analyzed

the sentence for an abuse of discretion, it contradicts Pearce.[4]

Under Pearce and its progeny, a rebuttable presumption of vindictiveness applies

when a defendant receives a more severe sentence after having exercised his due process

rights to appeal.  See United States v. Goodwin, 457 U.S. 368, 374 (1982).  This

presumption is limited to those cases where the circumstances demonstrate a "reasonable

likelihood that the increase in sentence is the product of actual vindictiveness on the part

---

[3] If, however, a claim is not "adjudicated on the merits in State court," we review it de novo, without giving AEDPA deference to the state court.  See Simmons v. Beard, 590 F.3d 223, 234 (3d Cir. 2009).  The parties dispute whether Balsavage's constitutional due process claim was "adjudicated on the merits" in state court such that the deferential standard of § 2254(d) applies.  We assume, without deciding, that Balsavage's due process claim was adjudicated on the merits in state court.

[4] The Superior Court concluded that Balsavage's sentence did not constitute an abuse of discretion under Pennsylvania law because the Gagnon court "thoroughly explained its rationale and its concerns, which led to the imposition of the sentence it deemed appropriate."  App. 337-38.

6

of the sentencing authority."[5] <u>Alabama v. Smith</u>, 490 U.S. 794, 799 (1989) (internal quotation marks and citation omitted).  Thus, if a judge imposes a harsher sentence after a successful appeal or collateral attack and the circumstances suggest a reasonable likelihood of vindictiveness, then "the reasons for [the increased sentence] must affirmatively appear."  <u>Pearce</u>, 395 U.S. at 726 (internal quotation marks and citation omitted); <u>see also</u> <u>United States v. DiFrancesco</u>, 449 U.S. 117, 135-36 (1980) (applying <u>Pearce</u> outside the context of retrial).

The presumption of vindictiveness "may be overcome only by objective information in the record justifying the increased sentence," <u>Goodwin</u>, 457 U.S. at 374, that sheds "new light upon the defendant's life, health, habits, conduct, and mental and moral propensities."  <u>Pearce</u>, 395 U.S. at 723.  This information includes both "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," <u>id.</u> at 726, and newly discovered information about conduct that occurred before the original sentencing that objectively supports an increased sentence. <u>See</u> <u>Texas v. McCullough</u>, 475 U.S. 134, 141 (1986).

The Superior Court's decision, applying only Pennsylvania law, was contrary to this clearly established Supreme Court precedent because it reviewed the resentencing for an abuse of discretion instead of applying a presumption of vindictiveness or considering the possibility that such a presumption applied.  The Gagnon court's reliance at

---

[5] Absent "such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness . . . ."  <u>Alabama v. Smith</u>, 490 U.S. 794, 799 (1989).

7

sentencing on "the fact that [Balsavage] appealed every decision and sentence [the] Court ever imposed on [him]," App. 236, suggests "actual vindictiveness on the part of the sentencing authority." Smith, 490 U.S. at 799. Moreover, that Balsavage's current sentence exceeds his original sentence by a factor of seven further shows the reasonable likelihood that it is the product of judicial vindictiveness. In light of these circumstances, the Superior Court's failure to apply a presumption of vindictiveness was contrary to Supreme Court precedent.

Furthermore, the Superior Court did not apply Pearce and its progeny to determine whether the resentencing record contains objectively derogatory information about events post-dating the original sentencing or newly discovered, objectively derogatory information about events pre-dating the original sentencing. As the Gagnon court acknowledged, Balsavage had been incarcerated since the time of his original sentencing and hence there was "virtually nothing . . . new or different from the time of the prior sentencing, as far as the background information." App. 234. As the Superior Court recognized, the only change between the original sentencing and the resentencing was that Balsavage's responses to the sentencing judge's queries corroborated some of the facts on which the Gagnon court relied in imposing the original sentence. This did not provide new evidence to support a sevenfold increase in Balsavage's sentence. See Jacobs v. Redman, 616 F.2d 1251, 1259 (3d Cir. 1980) ("[T]he mere fact that a defendant asserts his right to testify clearly does not negatively reflect on the defendant's life, health, habits, conduct or moral propensities in such a way as to justify the imposition of

8

an increased sentence." (citations omitted)). Thus, the Superior Court's focus on the Gagnon court's discretion without consideration of Pearce and the presumption of vindictiveness was contrary to Supreme Court precedent,[6] and as a result, Balsavage is presently detained "in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a).

## IV.

Having concluded that Balsavage has met his burden of showing that his current sentence is the product of judicial vindictiveness, we must consider the appropriate remedy. In reviewing a state prisoner's habeas petition, a federal court "does not review a judgment, but the lawfulness of the petitioner's custody simpliciter." Coleman v. Thompson, 501 U.S. 722, 730 (1991). Indeed, the federal court "does not have power to directly intervene in the process of the [state] tribunal which has incorrectly subjected the petitioner to the custody of the respondent official." Barry v. Brower, 864 F.2d 294, 301 (3d Cir. 1988); see also McKeever v. Warden SCI-Graterford, 486 F.3d 81, 85 (3d Cir. 2007); Dickerson v. Vaughn, 90 F.3d 87, 92 (3d Cir. 1996). As it relates to resentencing, the federal court may only "condition the issuance of a writ, which releases the body of

---

[6] Although the Superior Court did not identify Pearce or its progeny as the governing precedent, it did acknowledge that Balsavage's sentence would be problematic if the Gagnon court demonstrated a vindictive purpose. Even if that general discussion of vindictiveness under Pennsylvania law could be said to be an "identifi[cation of] the correct governing principle" from Supreme Court precedent, Blystone, 664 F.3d at 417, its conclusion in this case would also rest upon an unreasonable application of the law to the record here.

9

the prisoner from custody obtained through unconstitutional means, upon the state's [imposition of a sentence] that comports with constitu[t]ional dictates." Henderson v. Frank, 155 F.3d 159, 168 (3d Cir. 1998).

Because it is possible that Balsavage could be resentenced above his original sentence in a manner that comports with due process, we conclude that imposing a cap on Balsavage's new sentence would impermissibly limit the state court's exercise of sentencing discretion and exceed the federal court's authority to act on the body of a habeas petitioner.[7] Consequently, although we agree with the District Court that Balsavage's present sentence is the product of judicial vindictiveness in violation of Pearce, we will vacate the District Court's remedy with instructions to conditionally grant the writ of habeas corpus unless Balsavage is sentenced within 120 days in accordance with the Due Process Clause and the law interpreting it.

V.

For the foregoing reasons, we will affirm the District Court's order in part, vacate in part, and remand for proceedings consistent with this opinion.

---

[7] In fashioning a remedy, the District Court relied in part on Jacobs, 616 F.2d 1251, in which we held that a habeas petitioner's sentence on a second conviction violated Pearce and directed that the petitioner be resentenced to a term not to exceed his original sentence. Jacobs, however, explicitly adopted the procedure used in Frank v. Blackburn, 605 F.2d 910 (5th Cir. 1979), and that decision was subsequently vacated by the Fifth Circuit en banc. 646 F.2d 873 (1980). Our subsequent precedent describing the relief permissible under § 2254 provides that a habeas court should not interfere with the state criminal process more than is necessary to ensure compliance with constitutional law. See, e.g., McKeever, 486 F.3d at 85; Dickerson, 90 F.3d at 92; Barry, 864 F.2d at 301.